UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID VALENZUELA ARZATE,<br><br>Petitioner,<br><br>v.<br><br>SCOTT FRAUENHEIM, Warden,<br><br>Respondent. | No. 1:15-cv-01256-SKO HC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 1)** |

Petitioner, David Valenzuela Arzate, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In his petition, Petitioner presents two grounds for habeas relief: (1) violation of Petitioner's Due Process Rights by admission of highly prejudicial gang evidence; and (2) violation of Petitioner's right to a fair trial due to the trial court's failure to declare a mistrial or hold a hearing on juror bias. Having reviewed the applicable law, the Court will deny the petition.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

# I. Procedural and Factual Background[2]

Petitioner was dating Kari Moncibaiz ("Kari") and was the father of her unborn child. Kari and her estranged husband, Joel Moncibaiz ("Joel"), were arguing in the parking lot of their place of employment.[3] Petitioner happened to call Kari on her cellular telephone while the argument between Kari and Joel was in progress. Joel took the telephone from Kari and exchanged taunts and heated words with Petitioner. After ending the call, Kari got into her car and drove away from the parking lot.

A short time later, Kari drove back to the parking lot, followed by Petitioner in a separate car. Petitioner got out of the car and he and Joel immediately began fighting. During a lull in the fight, Kari approached Petitioner, lifted his shirt, and took a handgun out of his waistband. Kari returned to her car and Petitioner and Joel resumed fighting.

At some point during the fight, Petitioner broke away and went to Kari's car, entering the car on the passenger side. In the car, Petitioner and Kari struggled over the gun and Kari eventually threw the gun out of the car window. Petitioner exited the car and retrieved the gun.

Petitioner pointed the gun at Joel, who was 20 to 25 feet from him, and fired the gun. Joel turned and ran in a zig zag pattern away from Petitioner until he fell down, unharmed. In total, Petitioner fired the gun at Joel seven times.

After Petitioner stopped firing, Joel stood up and yelled at Petitioner. Kari left in her car, and Petitioner got into his car and left.

Petitioner was charged with four counts: count 1 - attempted premeditated murder (Cal. Penal Code §§ 664, 187); count 2 - assault with a firearm (Cal. Penal Code § 245(a)(2)); count 3 - participation in a street gang (Cal. Penal Code § 186.22(a)); and count 4 - possession of a firearm

---

[2] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Arzate* (Cal. Ct. App. April 2, 2009) (No. F053074), is presumed to be correct. 28 U.S.C. § 2254(e)(1).
[3] The record does not specify the date on which the incident occurred.

2

by a convicted felon (Cal. Penal Code § 12021(a)). The attempted premeditated murder and assault with a firearm offense were also alleged to have been committed for the benefit of, at the direction of, or in association with a criminal street gang ("criminal street gang enhancement"). (Cal. Penal Code §186.22(b)(1)).

On March 28, 2007, a jury found Petitioner guilty on all counts. However, the jury did not find the criminal street gang enhancement allegations to be true. Petitioner was sentenced to a prison term of 45 years to life, plus 26 years for firearm and prior-conviction enhancements, for a total operative sentence of 71 years to life on count 1. The court imposed and stayed a sentence on count 2, pursuant to California Penal Code § 654(a).[4] The court imposed concurrent sentences of 25 years to life, plus six years, for each of counts 3 and 4.

Petitioner filed a direct appeal, which was denied by the California Court of Appeal, Fifth Appellate District on April 2, 2009. The Court of Appeal affirmed the conviction, but corrected the sentence on count 1 to 25 years to life plus six years.[5] On July 15, 2009, the California Supreme Court summarily denied review.

---

[4] California Penal Code § 654(a), states:

> An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.

[5] The Court of Appeal held:

> The prescribed sentence for willful, deliberate, and premeditated attempted murder (count [1]) is life in prison with the possibility of parole. ([Cal. Penal Code] § 664, subd. (a).) Under normal circumstances, the minimum period prior to parole is seven years. ([Cal. Penal Code] § 3046, subd. (a)(1).) [Petitioner], however, was found to have three qualifying "strikes," so his sentence must be calculated under section 667, subdivision (e)(2)(a). That section provides that the minimum term of imprisonment must be the greater of three options set forth there. In this case, the second of those options, 25 years, provides the greatest minimum imprisonment. Accordingly, the correct sentence on count [1] is 25 years to life.
>
> The trial court pronounced a sentence of 45 years to life on this count. We will modify the sentence on count [1] to conform to the statutory requirement of 25 years to life.

*People v. Arzate* (Cal. Ct. App. April 2, 2009) (No. F053074), at *14.

On December 11, 2009, Petitioner filed a petition for writ of habeas corpus with the District Court (the "2009 Petition"). Petition for Writ of Habeas corpus, Azarte v. Holland, No. 1:06-cv-02156-MSJ (E.D. Cal. Dec. 11, 2009), ECF No. 1. In his 2009 Petition for habeas relief, Petitioner raised seven claims: (1) insufficient evidence to convict Petitioner of active participation in a criminal street gang; (2) trial court improperly denied his objections to gang evidence; (3) trial court improperly allowed prejudicial and inflammatory evidence linking Petitioner to a planned 2004 killing and an attempt to shoot an expert witness; (4) trial court erred in admitting evidence connecting the Norteño street gang to the Mexican Mafia prison gang; (5) trial court failed to give a limiting instruction regarding gang evidence, and Petitioner's counsel was ineffective for failing to request the instruction; (6) trial court improperly denied Petitioner's request for a mistrial based on jury misconduct;[6] and (7) trial court improperly denied his motion for substitution of counsel. *Arzate v. Holland*, No. 1:09-cv-02156 MJS HC, 2012 WL 5386578, at *1 (E.D. Cal. Nov. 1, 2012). On November 1, 2012, the District Court denied Petitioner's petition.

On November 26, 2012, Petitioner filed his Notice of Appeal with the Ninth Circuit Court of Appeals. On November 18, 2015, the Ninth Circuit dismissed Petitioner's appeal.

On April 10, 2014, the Attorney General of the State of California submitted a petition for writ of habeas corpus on Petitioner's behalf with the Superior Court of Stanislaus County. The Attorney General argued that Petitioner's custody "with respect to count 3[, participation in a street gang,] is unlawful and the [Attorney General] should not be compelled to unlawfully constrain [Petitioner]." (Lodged Doc. 1 at 1.) The Attorney General based this argument on a 2012 California Supreme Court opinion, which held that a defendant must act in concert with another in order to commit the crime of participation in a street gang. *People v. Rodriguez*, 55

---

[6] Petitioner has raised the jury misconduct claim—claim 6 in the 2009 Petition—again, as claim 2 in the petition currently before this Court.

4

Cal. 4th 1125, 1132, 1138-39 (2012). Because Petitioner's conviction for participation in a street gang was based on his own conduct and not on conduct in concert with another person, the Attorney General argued Petitioner was factually innocent of the offense. (Lodged Doc. 1 at 2.)

On May 6, 2014, the Stanislaus County Superior Court "recalled" Petitioner's sentence imposed on count 3, vacated Petitioner's conviction pursuant to California Penal Code § 186.22(a), and issued a new judgment on the remaining counts. (Lodged Doc. 5.)

On August 14, 2015, Petitioner filed a new petition for writ of habeas corpus with this Court, seeking relief based on the new judgment.[7] Petitioner presents two grounds for habeas relief: (1) violation of Petitioner's Due Process Rights by admission of highly prejudicial gang evidence; and (2) violation of Petitioner's right to a fair trial due to the trial court's failure to declare a mistrial or hold a hearing on juror bias. Respondent filed a response to the petition on October 8, 2015, and Petitioner filed a reply on October 30, 2015.

**II.     Standard of Review**

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000). On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5

---

[7] Petitioner may file a new petition for writ of habeas corpus based on the new judgment issued by the state court. *Magwood v. Patterson*, 561 U.S. 320, 340 n. 15 (2010) (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007) ("[W]here . . . there is a 'new judgment intervening between [ ] two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive' at all."))

5

(1979) (Stevens, J., concurring) [hereinafter *Virginia*]. Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. In doing so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). Petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

6

//

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. Decisions Regarding the Admission of Evidence are Matters of State Law, Not Cognizable on Federal Habeas Review

In his first ground for habeas review, Petitioner asserts his Due Process Rights were violated when the trial court admitted "highly prejudicial gang evidence." (Doc. 1 at 6.) Petitioner argues that the effect of this prejudicial evidence was exacerbated by the fact that the jury was not given a limiting instruction to only consider the gang evidence in connection with the gang charges. (Doc. 14 at 2.) Respondent counters that the admission of evidence is a matter of state law that is not cognizable on federal habeas review. (Doc. 12 at 7.)

#### A. Standard of Review for Admission of Evidence

Issues regarding the admission of evidence are matters of state law, generally outside the purview of a federal habeas court. *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). "Although the [U.S. Supreme] Court has been clear that a writ should be issued when

7

constitutional errors have rendered the trial fundamentally unfair, see *Williams*, 529 U.S. at 375 . . ., it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101.

### B. Proceedings Before the State Court

Petitioner was charged, among other charges, with active participation in a criminal street gang (Cal. Penal Code § 186.22(a)), and enhancements alleging his commission of attempted premeditated murder and assault with a firearm offense were committed for the benefit of, at the direction of, or in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)). *People v. Arzate* (Cal. Ct. App. April 2, 2009) (No. F053074). On May 6, 2014, the Stanislaus County Superior Court vacated Petitioner's conviction for active participation in a criminal street gang and issued a new judgment. (Lodged Doc. 5.)

Petitioner then filed a petition for writ of habeas corpus with the Court of Appeal based on the new judgment issued by the Superior Court on May 6, 2014. On January 22, 2015, the Court of Appeal summarily denied the petition, citing to a California Supreme Court opinion, *People v. Rios*, 222 Cal. 4th 542, 560-64 (2013). The Court in *Rios* analyzed California Penal Code § 186.22(b)(1),[8] and held that the § 186.22(b)(1) gang enhancement "may be applied to a lone actor." *Id*. at 564. Therefore, by citing to *Rios*, the Court of Appeal ruled that Petitioner was properly charged with the gang enhancement, even though he acted alone when he shot Joel.

---

[8] California Penal Code § 186.22(b)(1) states:

> any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as [prescribed].

8

## C. Evidentiary Decisions Made by a State Court Are Generally Not Reviewable by the Federal Court

Petitioner contends that presenting the gang evidence at trial was so prejudicial that it violated his constitutional rights. (Doc. 1 at 6.) Petitioner maintains the evidence was admitted only to "show [Petitioner] had a criminal disposition." (Doc. 14 at 3.)

"Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions." *Jammal v. Van de Kemp*, 926 F.2d 918, 920 (9th Cir. 1991). However, when there is no permissible inference the jury could draw from evidence, its admission violates due process. *Id*.

Here, Petitioner was charged with active participation in a criminal street gang, (Cal. Penal Code § 186.22(a)), and enhancements alleging his commission of attempted premeditated murder and assault with a firearm offense were committed for the benefit of, at the direction of, or in association with a criminal street gang (Cal. Penal Code § 186.22(b)(1)). The gang evidence was admitted to establish Petitioner's culpability for the murder and assault with a firearm offense based on his gang participation, which was impermissible. *See Kennedy v. Lockyer*, 379 F.3d 1041, 1055-56 (9th Cir. 2004) ("Evidence of gang membership may not be introduced . . . to prove intent or culpability.") (citing *Mitchell v. Prunty*, 107 F.3d 1337, 1342-43 (9th Cir. 1997) (holding that evidence of membership in a gang cannot serve as proof of intent, because, while someone may be an "evil person," that is not enough to make him guilty under California law)).

Although Petitioner's conviction for active participation in a criminal street gang was eventually overturned, the presentation of gang evidence was proper to prove the gang enhancement. As the Court of Appeal noted in its original opinion:

>  the [gang] evidence in this case was relevant to both the gang enhancement

allegations and the substantive gang participation charge. It was clear that the expert's testimony was presented to establish that (1) the Norteños were, in fact, a criminal street gang and that they, as defined by section 186.22, subdivision (f), were an "ongoing organization" that had "as one of its primary activities the commission of one or more" enumerated crimes, and (2) that defendant knew so much detailed information about the gang's activities that he was a member of the gang. These were core requirements for proof of the prosecution's case. . . .

*People v. Arzate* (Cal. Ct. App. April 2, 2009) (No. F053074), at *8.

The Court does not find the admission of the gang evidence violated Petitioner's Due Process Rights.

Petitioner additionally argues that the prejudicial effect of the gang evidence was exacerbated because the court did not give a limiting instruction as to how the jury should use the evidence. (Doc. 14 at 2.) However, a state trial court's instructional error alone does not raise a cognizable ground for federal habeas relief. *Dunckhurst v. Deeds*, 859 F.3d 110, 114 (9th Cir. 1988). To form the basis of a federal constitutional claim, the error must so infect the trial that the resulting conviction violates due process. *Estelle*, 502 U.S. at 72. Here, given the fact that the jury did not find the gang enhancement to be true, the Court cannot say that the evidence improperly influenced their verdict. *See Park v. California*, 202 F.3d 1146, 1150 (9th Cir. 2000) ("We have held that the failure of the jury to convict on all counts is the best evidence of the jury's ability to compartmentalize the evidence.") (internal quotation marks and citations omitted). Therefore, the Court will deny Petitioner's claim that the admission of gang evidence violated his Due Process Rights.

Further, even if the Court found that Petitioner's Due Process Rights had been violated, no clearly established Federal law applies to permit a grant of federal habeas relief for the admission of evidence that is considered prejudicial. *Holley*, 568 F.3d at 1101 (The Supreme Court has not determined whether the admission of irrelevant or prejudicial evidence constitutes a due process violation.). Consequently, the Court will deny relief on Petitioner's claim that gang evidence was

improperly admitted at trial.

### IV. The Juror Bias Claim Was Previously Decided With the Decision Denying the 2009 Petition.

In his second ground for habeas relief, Petitioner contends that the trial court erred by failing to declare a mistrial or holding a hearing on juror bias. (Doc. 1 at 8.) Respondent counters that this claim was raised in the 2009 Petition and the Court need not revisit the issue, because the claim was properly rejected on the merits. (Doc. 12 at 11.)

#### A. District Court Opinion on the 2009 Petition

In his 2009 Petition, Petitioner argued that the trial court erred in failing to declare a mistrial due to juror bias. *Arzate v. Holland*, 2012 WL 5386578. The District Court described Petitioner's argument and the state court opinion:

> Petitioner contends that his motion to declare a mistrial was improperly denied, and that he was not tried by a fair and impartial jury. Specifically, Petitioner asserts that the jurors were scared after an incident occurred where they were photographed in the hallway during a break. Despite the court investigating and questioning the jurors regarding their ability to remain impartial, Petitioner asserts that they were not and that a mistrial was appropriate.
>
> 1. State Court Opinion
>
> The last reasoned state court decision is from the California Court of Appeal, Fifth Appellate District Court's decision confirming Petitioner's conviction. The court explained:
>
> IV. Jury Misconduct Issues
>
> A. Additional Facts.
>
> The courtroom in which this case was tried was configured such that the members of the jury had to exit into a common hallway to reach the elevators. On the third day of the seven-day trial, when the jurors left the courtroom, a young woman standing by the elevators appeared to be using her cellular telephone to take pictures of the jurors. Some of the jurors noticed this and, apparently, discussed it among all the jurors the next day. At the afternoon break on the fourth day of the trial, one of the jurors brought the matter to the court's attention: "Your honor, I have a problem before we walk out of this door with what happened yesterday." When the court asked that juror to remain behind to discuss the matter, the juror said: "I'm sure the whole jury

feels the same way." Another juror said: "We do." The original juror added: "I don't think anybody wants to walk out that door."

The court directed the jury to return to the jury room and told the jurors that any who wished to could write out on a piece of paper what had happened and what concerns they had, sign the paper, and give it to the bailiff for delivery to the court. Each of the jurors turned in a note. The content ranged from (paraphrasing) "I saw nothing and am not concerned" through "I am concerned because of the woman taking pictures" to "I am concerned because of the nature of this case, gangs, defendant's note-taking, and the presence of people in the hallway outside the courtroom."

After reviewing the notes with counsel, the court stated: "It is a concern to me that there seems to be almost a universal concern for their safety expressed by the jurors, and we can certainly probe further to see if they can set those feelings aside, but I do have some serious concerns, frankly, about whether or not this incident has so tainted this jury panel that we can continue." In the ensuing discussion, defense counsel did not request a mistrial. Counsel suggested additional security measures such as those proposed by the court, and requested the jurors be told the personal information provided to the court had been sealed and was not available to anyone without a court order.

The court decided to send the jury home for the weekend. It advised the jury that the personal information was under seal and there would be additional security both that day and when the jurors returned Monday morning. The court also stated it understood the jurors' concerns and that the matter would be investigated in an effort to determine who was taking the pictures.

The following Monday the court met with counsel, said it had thought about the matter over the weekend, and proposed to admonish the jury in a manner the court shared with counsel. Defense counsel then moved for a mistrial on the basis that the juror notes showed the jurors were now prejudiced against defendant. He contended they could not be "rehabilitated" and that the jurors would not truthfully admit that they no longer could give defendant a fair trial. The court impliedly denied the mistrial motion and stated that it would proceed with the admonition and further inquiries to the jury.

After introductory remarks about additional security for the jurors and the possibility of imposition of sanctions on the person taking the pictures if any juror saw her at the courthouse again, the court stated to the jury: "There is no evidence that defendant was in any way connected with this incident. It would be improper for any of you to assume that defendant is responsible for this incident. You must – you must put this matter out of your minds and be fair in this case, deciding this case based upon the evidence that is produced in the courtroom and upon the law as I give it to you. Can you all assure me and the parties that you will wait until you hear all of the evidence and the law before deciding any of the issues in this case and that you can be fair and impartial jurors in this case? If you can be, would you please raise your

hand?" All of the jurors did.

The court then sent all of the jurors except juror No. 2 to the jury room. The court explained to juror No. 2 that there was some concern because his written statement to the court had said, "Some of the jurors are scared for retaliation against them because of the defendant is a gang member." The Court: "I just want to make sure, sir, that you have not already come to a conclusion and judgment about this case, because that's one of the issues that you will be called upon to decide." Juror No. 2: "All right." The court: "Can you assure all of us that you have not decided this case and that you will wait until the evidence is in and the law is given to you before reaching your conclusions?" Juror No. 2: "Yeah."

The court rejected defense counsel's request to question juror No. 2 and rejected counsel's request that the court conduct further questioning as to whether the jurors had already discussed the case among themselves. The court stated: "I rejected that request because of the assurances that have already been given to us by [juror No. 2] and the rest of the jurors." The jury returned to the courtroom and trial resumed.

B. Discussion

Defendant contends the court did not make a sufficient inquiry of the jurors to determine "the facts," that is, to determine whether there are grounds to "discharge one or more of the jurors." Defendant cites People v. Burgener (1968) 41 Cal. 3d 505, 519 (Burgener), in support of his claim.

The issue in Burgener was whether a particular juror was intoxicated, as was reported to the court by the jury foreperson. At the request of defense counsel, the court failed to inquire about the issue and permitted the jury to continue its deliberations. Defendant then appealed from his conviction, contending the court had failed in its duty of inquiry. (Burgener, supra, 41 Cal. 3d at p. 517.) The Supreme Court agreed the court had a duty to investigate the matter and determine whether the juror should be discharged and that it was error not to do so. (Id. at p. 520.) However, the court concluded the error did not require reversal because the record did not reflect that the juror was in fact incapacitated; the record did not do so because of defense counsel's actions. The court held that, in these circumstances, defendant should be relegated to a showing on habeas corpus that the juror was incapacitated, in much the same way a defendant can establish additional facts for a claim of constitutionally ineffective counsel. (Id. at pp. 521-522.)

We have similar concerns in the present case. When the matter was first brought to the court's attention and the court stated an inclination to discharge the jury, defense counsel sought to minimize the issue, contending, "[J]urors sometimes do, I think, sometimes, you know, unreasonably expect a certain amount of anonymity to their process and all. And all I can tell you is in my position is freedom does not come without some risk that applies to all

13

citizens." FN6

> FN6 One can well imagine counsel making a calculated judgment that, even if his client was not behind the incident, if the jury had been intimidated by the picture-taking, it might be reluctant to convict defendant.

> By Monday, morning, after an opportunity to confer further with his client and, possibly, being reminded that defendant thought the witnesses would not show up for the current trial and perhaps they would not show up if there had to be a retrial, counsel moved for a mistrial.

> In any event, even if there are other, wholly innocent, explanations for counsel's change of direction, one thing is indisputable: counsel did not request the dismissal of particular jurors who might have been prejudiced by the hallway encounter. His only request was that the trial end, not that it continue with a more unbiased jury. His only request to the court to conduct a further inquiry was in the context of the mistrial motion, not in the context of a particularized objection to any individual juror.

> We are satisfied that the trial court here conducted the proper inquiry, addressed the jurors' concerns, and determined the jury would be able to decide the case based on the evidence. Its admonition to the jury further ensured this result. (See People v. Harris (2008) 43 Cal. 4th 1269, 1304-1305.) The record contains nothing that leads to a different conclusion: the jury was able to consider the evidence in such a manner that it determined the shooting offenses were not gang related, an indication the jurors had not been prejudiced by the camera incident. As in Burgener, any showing of prejudice that conflicts with the state of the record should be established through habeas corpus proceedings. (See Burgener, supra, 41 Cal. 3d at pp. 521-522.)

*Id*. at *16-19.

Addressing the trial court's failure to declare a mistrial based on juror bias from the 2009 Petition, the District Court noted:

> [t]he Fourteenth Amendment of the United States Constitution safeguards a criminal defendant's Sixth Amendment right to be tried by a panel of impartial and indifferent jurors. *See Irvin v. Down*, 366 U.S. 717, 722 (1961); *see also Hayes v. Ayers*, 632 F.3d 500, 507 (9th Cir. 2011) (quoting *Irvin*, 366 U.S. at 722) ("The Sixth Amendment right to a jury trial 'guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors.'") "It is not required, however that the jurors be totally ignorant of the facts and issues involved." *Irvin*, 366 U.S. at 722-23 (finding that [the] mere existence of preconceived notion of guilt or innocence of accused is insufficient by itself to rebut the presumption that a prospective juror is impartial). Rather, due process requires that a defendant be tried by "a jury capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217 (1982); *see also Fields v. Brown*,

14

503 F.3d 755, 766 (9th Cir. 2007). Jurors are objectionable if they have formed such strong and deep impressions that their minds are closed against conflicting testimony. *See Irvin*, 366 U.S. at 722 n. 3. The presence of even one biased juror deprives a defendant of the right to an impartial jury. *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).

The Sixth Amendment also requires the jury verdict be based entirely on the evidence produced at trial. *Turner v. Louisiana*, 379 U.S. 466, 472-473 (1965). When presented with allegations of jury misconduct or juror bias, the trial court is required to determine what transpired, the impact on the jurors, and whether or not what transpired was prejudicial. *Remmer v. United States*, 347 U.S. 227, 229-230 (1954); *Dyer*, 151 F.3d at 974 ("A court confronted with a colorable claim of juror basis must undertake and investigation of the relevant facts and circumstances."). As the Supreme Court noted:

> [T]ampering directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial . . . The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.

*Remmer*, 347 U.S. at 299 (citing *Mattox v. United States*, 146 U.S. 140, 148-150 (1892)); *see also Xiong v. Felker*, 681 F.3d 1067, 1076 (9th Cir. 2012).

The appellate court ultimately concluded that the trial court "conducted the proper inquiry, addressed the jurors' concerns, and determined the jury would be able to decide the case based on the evidence." *Arzate*, 2009 Cal. App. Unpub. LEXIS 2667, *38-*39, 2009 WL 866849. Further, the appellate court found that the trial court's admonition to the jury further ensured that the jury would decide the case based on the evidence. *Id*. The Court finds the state court's decision to be an objectively reasonable application of the Supreme Court precedents. The trial court in this case conducted the hearing required by *Remmer* with all counsel present and participating. The trial court in this case conducted the hearing required by *Remmer* with all counsel present and participating. The trial court examined the juror's answers and demeanor for signs of potential prejudice stemming from [the] hallway incident in which several of the jurors may have been photographed and in assessing the juror's ability to render an impartial decision on the evidence. Thus, the appellate court's finding that Petitioner's constitutional rights were not offended when the trial court denied Petitioner's motion for mistrial was not an objectively unreasonable application of Supreme Court precedents and Petitioner is not entitled to habeas corpus relief.

*Id*. at *19-20.

In sum, the District Court dismissed Petitioner's claim in the 2009 Petition that the trial court erred by failing to declare a mistrial due to juror bias because the state court's decision was

not an objectively unreasonable application of Supreme Court precedent. *Id*.

### C. **The Juror Bias Claim Was Correctly Decided in the 2009 Petition.**

The issue of whether the trial court erred in failing to declare a mistrial based on juror bias was decided with the denial of the 2009 Petition. *See Id*. Generally, a petitioner may not make a claim in a second or successive habeas petition that was presented in a prior application. 28 U.S.C. § 2244(b)(1). However, in this case, a new judgment was entered in state court after the 2009 Petition was denied. The Supreme Court has held "where . . . there is a 'new judgment intervening between [ ] two habeas petitions,' . . . an application challenging the resulting new judgment is not 'second or successive' at all." *Magwood v. Patterson*, 561 U.S. 320, 340 n. 15 (2010) (quoting *Burton v. Stewart*, 549 U.S. 147, 156 (2007)).

The Supreme Court has not directly decided whether a new judgment allows a petitioner to re-raise a claim rejected on the merits in a previous federal petition. Instead, the Court has noted "[i]t will not take a court long to dispose of such claims where the court has already analyzed the legal issues." *Magwood v. Patterson*, 561 U.S. 320, 340 n. 15 (2010).

In this case, a new judgment was entered in state court, but Petitioner is simply re-raising a claim that was rejected on the merits in the 2009 Petition. The new state court judgment did not alter the legal or factual basis upon which the District Court's analysis of this claim rests. Accordingly, this Court will deny Petitioner's juror bias claim. As thoroughly analyzed and expounded upon in the order denying the 2009 Petition, the Court of Appeal's finding that Petitioner's constitutional rights were *not* violated when the trial court denied Petitioner's motion for mistrial, was not objectively unreasonable. Consequently, the Court will deny Petitioner's claim that the trial court erred in failing to declare a mistrial due to juror bias.

## V. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . .

17

part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court declines to issue a certificate of appealability.

**VI.  Conclusion**

Based on the foregoing, the Court hereby DENIES with prejudice the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability. The Clerk of the Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated: __**March 1, 2018**__                    /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE